## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**GAYLE T. BENNETT, ET AL.**                                    **CIVIL ACTION**

**VERSUS**                                                      **NO: 07-3130**
                                                                **c/w 07-3131**

**BOARD OF COMMISSIONERS FOR**                                  **SECTION: "K"(2)**
**EAST JEFFERSON LEVEE DISTRICT, ET AL.**

## <u>ORDER AND REASONS</u>

Before the Court are the following motions: Motion to Dismiss (Rec.Doc.No. 4); Motion

to Remand (Rec.Doc.No. 8); Motion to Remand (Rec.Doc.No. 18); Motion to

Remand(Rec.Doc.No. 23); Motion to Remand (Rec.Doc.No. 24). After reviewing the pleadings,

memoranda, relevant law, and Oral Argument of the parties on August 8, 2008, the Court finds

that Plaintiffs' motions to remand have merit and grants the motions for the reasons assigned

herein.[1]

---

[1]     The following cases are also remanded pursuant to this order because they raise
the same issues of law: *Chicago Properties Interest, L.L.C. v. Broussard et al.*, No. 07-4126
(E.D. La. removed Aug. 15, 2007); *Manard et al. v. Bankers Ins. Co. et al*, No. 07-4127 (E.D.
La. removed Aug. 15, 2007); *Cason et al. v. Broussard et al.*, No. 07-4128 (E.D. La. removed
Aug. 15, 2007); *Loga et al v. Jefferson Parish et al*, No. 07-4152 (E.D. La. removed Aug. 15,

# I. BACKGROUND

Plaintiffs in these consolidated actions are: Maurice de la Houssaye, Donna Cummings, Diane and Kenneth Gordon, and Gaye and William Bennett. The putative class members included all residents, business entities, property owners, and other person and entities residing or present on August 29, 2005, inside the geographic are bounded by (1) Metairie Road to the North, (2) Mississippi River to the South, (3) 17th Street Canal to the East, and (4) North Arnoult Road to the West (also known as the "Hoey's Basin").

Defendants include Louisiana Department of Transportation and Development, Aaron Broussard,[2] Board of Commissioners of the East Jefferson Levee District, Drainage Department of the Public Works Department of Jefferson Parish, Sewerage and Water Board of New Orleans, Board of Commissioners of Orleans Levee District, City of New Orleans, Jefferson Parish, Board of Commissioners of the Port of New Orleans, American Alternative Insurance Company ("American Alternative") (a foreign insurer).

Plaintiffs claim that their damages were "caused by the gross negligence and reckless disregard for the safety of the residents of the Parish of Jefferson in failing to secure and/or close the Geisenheimer Flood Gate, causing flood waters from the 17th Street Canal to back through the Geisenheimer Flood Gate and thence through the drainage system of the flooded area, rising

---

2007); *Levy v. Jefferson Parish et al*, No. 07-4153 (E.D. La. removed Aug. 15, 2007); *Kaczmarek et al v. Broussard et al.*, No. 07-4154 (E.D. La. removed Aug. 15, 2007); *Brown et al. v Broussard et al*, 07-4155 (E.D. La. removed Aug. 15, 2007); *Schmidt v. Jefferson Parish et al*, No. 07-4156 (E.D. La. removed Aug. 15, 2007).

[2]        Broussard is sued in his individual and official capacity.

up through the catch basins, causing wide spread flooding."[3]

Suit was filed initially on October 27, 2005 by the de la Houssaye with the Bennetts filing a nearly identical lawsuit on August 28, 2006. These actions involved the same claims and putative class members.[4] On October 26, 2006, the de la Houssaye plaintiffs amended their Petition adding Aaron Broussard and American Alternative Insurance Company as Jefferson Parish's ostensible insurer. The case was consolidated in state court for discovery purposes on December 22, 2006. On May 28, 2007, a Master Consolidated Class Action Petition ("Master Petition") regarding both the *De la Houssaye* and *Bennett* actions was filed in the Twenty-Fourth Judicial District Court for the Parish of Jefferson.[5] Service of the Master was effected on Defendant Sewerage and Water Board of New Orleans ("SWB") on May 29, 2007. On June 5, 2007, separate notices of removal were respectively filed by SWB for the *Bennett* and *De la Houssaye* actions. The Court now considers whether removal of these actions was proper under the Class Action Fairness Act ("CAFA").[6]

---

[3]     *See* Mot. Remand at 6 (Rec.Doc.No. 8).

[4]     *Id.*

[5]     *Id.*

[6]     *See* 28 U.S.C. § 1453.

3

## II. DISCUSSION

**A.**     **Timeliness of Removal under CAFA**

As cited above, a class action may be removed to a federal district court in accordance with the provisions of 28 U.S.C. § 1446, "except that the 1-year limitation under section 1446(b) shall not apply" and consent of all defendants is not needed. 28 U.S.C. § 1453(b).

Section 1446 provides the following:

> **(a)** A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

> **(b)** The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(a) & (b)

Defendant Sewerage and Water Board ("SWB") contends that it was not added as a named Defendant in the *De la Houssaye* action until the Master Consolidated Class Action Petition was ordered and filed on May 28, 2007. Thus, SWB asserts that its removal of the *Bennett* and *De la Houssaye* actions on June 5, 2007, was timely. As basis for this position, Defendant cites a recent Fifth Circuit ruling which states that "amendments that add a defendant 'commence' the civil action as to the added party" and, therefore, "opens a new window of removal" under 1446(b). *Braud v. Transport Service Co. of Illiniois*, 445 F.3d 801 (5th Cir. 2006).[7]

Defendant further argues that it could not remove the case prior to consolidation because American Alternative, a foreign citizen, was not added as a party in the *Bennett* action until the filing of the Master Consolidated Class Action Petition on May 28, 2007. It was at this time there existed minimal diversity such that removal under CAFA was proper.

Plaintiffs oppose removal as untimely citing *Hood v. Beacon Therapeutic*, 1997 WL 323782 (N.D. Ill. Jun. 9, 1997), which stands for the proposition that consolidation did not give grounds for removal because it was not a "new" claim and Defendant had notice of the claim for over a year.[8] The primary distinction between *Hood* and the instant matter is that SWB was not a

---

[7]      "[I]f an original complaint is not amended, removal must be determined based only on the law and facts as to removability at the time of filing or receipt of the initial pleading under § 1446(b)(1)." *Braud*, 445 F.3d at 805.

[8]      In *Hood*, the plaintiff filed a wrongful death action (No. 95 L 9646) against the Chicago Board of Education in state court. Plaintiff then amended the wrongful death action, adding other defendants, including Beacon. Subsequently, the plaintiff filed a separate civil rights action other defendants including Beacon based on the same facts giving rise to the wrongful death action.
        On plaintiffs motion, the two actions were consolidated. Beacon filed a notice of removal of the consolidated action. The court held that this removal was untimely and improper

party to the *Bennett* action until consolidation of *Bennett* and *De la Houssaye* and, therefore, SWB had no opportunity to remove the *Bennett* action until consolidation. In *Hood*, Beacon was a party to both actions prior to consolidation. Thus, the Court finds that SWB timely removed the *Bennett* and *De la Houssaye* actions in accordanec with 28 U.S.C. § 1453.

## B.       Abstaining from CAFA jurisdiction

It is undisputed that the matter in controversy exceeds the sum of $5 million, exclusive of interest and costs, and meets the minimal diversity requirement. A district court, however, must abstain from the exercise of subject matter jurisdiction under CAFA in some circumstances – namely, where a defendant is sued in its home state by a class comprised primarily of plaintiffs from that state, where the case involves a purely local controversy, and where the primary defendants are state actors. 28 U.S.C. § 1332(d)(3), (4) and (5). A district court also has the discretion to abstain from the exercise of subject matter jurisdiction under CAFA. The Court finds that it must abstain from exercising CAFA jurisdiction based on the Home State Exception for the reasons assigned below.[9]

The Home State Exception provides that a court shall decline CAFA jurisdiction when:

> (B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants,

---

stating that thirty-day period to removal was lapsed as the consolidation of the cases did not give rise to a new case.

[9]       Because the Court finds that the Home State Exception applies, the Court need not address the other abstention arguments raised by Plaintiffs.

are citizens of the State in which the action was originally
filed.

28 U.S.C. § 1332(d)(4).

Plaintiffs suggests that the *De la Houssaye* and *Bennett* actions meet the requirements of the mandatory abstention provision of subsection (d)(4)(B). Defendants oppose remand arguing that Plaintiffs have not made a showing that greater than two-thirds of the putative class members are Louisiana domiciliaries. Moreover, Defendants also oppose remand based on the Home State Exception because American Alliance is not a Louisiana domiciliary and, therefore, not all of the primary defendants are citizens of the state in which the action was filed.

### i.    Burden of Proof - *Preston I and II*

The burden of showing an exception to CAFA jurisdiction is on the party moving for remand. *Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 546 (5th Cir. 2006) (citing *Evans v. Walter Industries, Inc.*, 449 F.3d 1159, 1164-65 (11th Cir. 2006)). In determining whether two-thirds of putative class members are in-state citizens, a question arises as to what proof in any do plaintiffs need to provide in order to meet there burden. The Fifth Circuit recently examined the plaintiffs' burden to show that  greater than two-thirds of the putative class members were citizens of the state in which the suit was filed. *See Preston v. Tenet Healthsystem Memorial Medical Center, Inc.*, 485 F.3d 804 (5th Cir. 2007)("*Preston I*"); *Preston v. Tenet Healthsystem Memorial Medical Center, Inc.*, 485 F.3d 793 (5th Cir. 2007) ("*Preston II*").[10] The *Preston II*

---

[10]    *Preston I* refers to the Fifth Circuit opinion that upheld Judge Fallon's remand order. *Preston II* refers to the Fifth Circuit opinion that reversed Judge Lemmon remand order.

court wrote:

> [T]he parties moving to remand the class action must prove that the CAFA exceptions to federal jurisdiction divest the district court of subject matter jurisdiction. We also held that the party moving for remand must prove the statutory citizenship requirement by a preponderance of the evidence. We reasoned that Congress explicitly enumerated and envisioned deviations from the general removal statute, and noting in CAFA's text suggests that Congress meant to impose a heightened burden of proof on parties attempting to remand a class action lawsuit to state court.

*Preston*, 485 F.3d at 797 (citations omitted).

Applying this standard, the *Preston I* court held that greater than two-thirds of the putative class members were in-state domiciliaries relying upon primary billing addresses provided in the medical records, emergency contact information for the deceased patients, the current addresses for some of the potential class members, eight affidavits stating an intent of returning to New Orleans, and the fact that suit occurred less than two months after the storm. *Preston I*, 485 F.3d at 816-818.[11]

In *Preston II*, the court held that sufficient evidence was not offered establishing greater than two-thirds of the plaintiffs were in-state domiciliaries. Despite an offer an of the patients' primary billing addresses listed in the medical records at the time of Hurricane Katrina, the *Preston II* court held that, "[s]ince [plaintiffs] offered no evidence regarding the citizenship of the proposed class for the relevant time period, we find that the parties failed to meet the two-thirds citizenship requirement..." *Preston II*, 485 F.3d 803;  *Caruso v. Allstate Ins. Co.*, 469

--------

[11]     Because domicile for the purposes of CAFA abstention is determined at the time the suit is filed, the fact that suit was filed two months after the hurricane makes it more likely that the Louisiana domiciliaries who were forced to leave Louisiana had not yet determined whether or not to return. Thus, there domicile would still be Louisiana.

F.Supp.2d 364 (E.D. La. Jan. 8, 2007). Another distinction in *Preston II* was that suit was filed more than one year after the storm.

In *Preston I*, the Fifth Circuit specifically acknowledged that there is a common-sense presumption that can be applied to a closed-end class. *Preston I*, 485 F.3d at 819 (citing *Caruso v. Allstate Ins. Co.*, 469 F.Supp.2d 364 (E.D. La. Jan. 8, 2007)). The Fifth Circuit wrote, "We agree with the notion that the damage and destruction wrought by Hurricane Katrina warrants the court's incorporation of common-sense as part of the calculus in determining the citizenship of the class members." *Id.* Furthermore the Court wrote

> In light of the vast post-Katrina diaspora and the undisputably slow revitalization in parts of New Orleans, it is unreasonable to demand precise empirical evidence of citizenship in a class action lawsuit filed less than sixty days after the hurricane and related flooding. Many Hurricane Katrina victims may intend to return home yet are still dispersed throughout Louisiana and other states for reasons beyond their control, such as not having shelter and employment in the New Orleans area.

*Id.* Ultimately, the *Preston I* court held that "[k]eeping in mind the measurable bounds of the proposed class, we conclude that the district court made a reasonable inference regarding the temporary dual residency of the displaced Louisiana citizens at issue in this case."

Utilizing this common sense approach, the Court finds that the class definition supports an inference that more than two-thirds of plaintiffs are citizens of Louisiana. In *Caruso*, the Honorable Judge Vance relied on the plaintiffs' complaint and found that a description of the proposed class as all Louisiana homeowners who had purchased homeowner's policies from one of six defendant insurance companies was sufficient "to establish that more than two-thirds of

the proposed class are Louisiana citizens." *Caruso*, 469 F.Supp.2d at 367.[12]

Here, the class is described as follows:

> The class action is brought on behalf of all residents, domiciliaries, business entities, property owners, and other persons and entities residing or present on August 29, 2005, inside the geographic area bounded by (1) Metairie Road to the North, (2) Mississippi River to the South; (3) 17th Street Canal to the East, and (4) North Arnoult Road to the West (also known as Hoey's Basin"), who or which suffered damages, injury or loss as a result of Hurricane Katerin-related flooding on and after August 29, 2005, and/or thereafter may have suffered additional damages including but not limited to personal injury, loss of income and other and non-economic losses, mental anguish and distress, long term health risks associated with exposure to polluted flood waters, relocation expenses, damage to real property, and damage to personal property.[13]

Because the class members here include "residents, domiciliaries, business entities, property owners, and other persons and entities residing or present on August 29, 2005," and there was no mass exodus from Jefferson Parish following Hurricane Katrina, the Court finds that it is reasonable to infer that greater than two-thirds of the class members are Louisiana citizens.

The circumstances of this case are distinguishable from those in *Preston I & II*, where the mass exodus essentially put domicile of putative class members at issue.[14] In *Preston I*, there was

_____

[12]   The motion to remand in *Caruso* was ultimately denied because the local controversy exception's requirement that no other class action asserting same factual allegations against any of the defendants has been filed within three-year period preceding suit was not satisfied.

[13]   *See* Notice of Removal, State Court Petition (Rec.Doc.No. 1).

[14]   Certainly, the mass exodus from Orleans Parish was the factual circumstance that drove the court's analysis in *Preston I & II*. Indeed, the Fifth Circuit stated:

> In the wake of Hurricane Katrina, and the compounding effects of the breached levees, nearly eighty percent of the New Orleans was

proof, however minimal, of an intent to return to Orleans Parish,[15] which negated the defendant's offer of proof that established many of the potential class members resided outside of Louisiana after the storm. Furthermore, in *Preston II*, there was no such proof of intent that would negate the fact that the mass exodus from Orleans Parish caused many to change their domicile after the storm.

Here, there was no similar mass exodus from Jefferson Parish. Plaintiffs offer election

---

> engulfed in flood waters rising over twenty feet in lower-lying areas. These cataclysmic events damaged destroyed, or rendered inaccessible approximately 850,000 housing units. Left with no other option, authorities vested with the responsibility of public safety forced people to evacuate New Orleans in any available mode of transportation. The underlying facts of this lawsuit and the reason for the parties contesting the citizenship issue emanate from a common origin of circumstance: the unmerciful devastation caused by Hurricane Katrina. As an inevitable result of the property damage and evacuation, a great majority of the city's population either temporarily or permanently relocated to habitable areas of Louisiana and other states. In this case, the aftermath of Hurricane Katrina and attendant flooding serves as a common precipitating factor for the mass relocation pertinent to our citizenship determination and threads together the proposed class and many other citizens. The sheer magnitude of this shared catalyst formed an adequate backdrop for the district court's extrapolation that the reasons offered by the affiants for not immediately returning home, i.e., repairing the family home, finding gainful employment, and waiting for the availability of housing units, were probably representative of many other proposed class members.

*Preston I*, 485 F.3d 817.

[15]     In *Preston I*, the court relied on eight affidavits filed by plaintiffs suggesting they had an intent to return to their home after the storm - e.g. "[affiant] has every intention on returning as soon as her house is repaired." The Court used these affidavits to infer that many plaintiffs had the intention to return home.

statistics[16] arguing that these documents demonstrate that there was no mass exodus from Jefferson Parish due to Hurricane Katrina. These documents indicate that prior to the hurricane 269,103 registered voters in Jefferson Parish, and after the hurricane there were 279,776 registered voters.[17]

The Court also reviewed public documents which indicated that Jefferson Parish had 452,824 residents prior to the hurricane and 435,786 residents post-hurricane compared with Orleans Parish which had 454,863 prior to the hurricane and 187,525 residents after the hurricane.[18] Based on this evidence, the Court finds that there was no analogous mass exodus of Jefferson Parish as in Orleans Parish because of Hurricane Katrina and, therefore, it is reasonable to infer that greater than two-thirds of the putative class members are citizens of Louisiana based on a common sense reading of the definition of the class in the complaint, the evidence offered by Plaintiffs, and the Court's conclusion that no substantial diaspora from Jefferson Parish took place after Hurricane Katrina.

---

[16]     *See* Mot. Leave File Exs. in Support of Mot. Remand, Exhibit B & C (Rec.Doc.No. 41).

[17]     *Id.*

[18]     Comprehensive New Study Reveals Updated Population Numbers in Storm-Affected Parishes, U.S. Census Bureau and CDC; available online at www.popest.org.

ii.    **Primary Defendant**

Defendant SWB argues that because all primary defendants must be from the state in which the action was filed in order to remand under (d)(4)(B) and American Alliance is non-Louisiana domiciliary primary defendant, this case cannot be remanded.[19] There is little guidance as to what constitutes a primary defendant, but Judge Vance has written the following:

> The term "primary defendants" is not defined anywhere in CAFA. Clearly, CAFA intended there to be a substantive difference between "primary defendants" and "significant defendants" as contemplated by the two exceptions to the exercise of jurisdiction under the statute. The dictionary definition of "primary" includes "first in importance; chief; principal; main." Webster's New World College Dictionary 1140 (4th ed.1999). By contrast, the dictionary definition of "significant" includes "important." These definitions appear particularly apt in the context of CAFA, meaning that a significant defendant is of less importance than a primary defendant. Additionally, a significant defendant is obviously one who is something more than "insignificant," which is defined as "having little or no importance" or "trivial."

*Caruso*, 469 F.Supp.2d at 369 (citations omitted).

Moreover, another court has noted that "[s]ome courts have held that the term "primary defendant" includes any defendant against whom direct liability is sought and, therefore excludes a defendant whose liability is based on vicarious liability, indemnification, or contribution." *Robinson v. Cheetah Transp.*, 2006 WL 2233580, at *2 n. 3 (W.D. La. Nov. 14, 2006) (Brady, J.).

Here, American Alliance has a maximum exposure of liability of $4,000,000, as an insurer, which is minimal in comparison to the vast amount of damages sustained by the

---

[19]    All other Defendants here are political subdivisions of the State of Louisiana.

members of the putative class. Moreover, American Alliance's liability is not direct but based on a contract of insurance with the alleged tortfeasor. For these reasons, the Court finds that American Alliance not a primary defendant.

Accordingly, because Plaintiffs have shown that greater than two-thirds of the putative class members are citizens of Louisiana and all primary Defendants are citizens of Louisiana,

**IT IS ORDERED** that the Motion to Remand (Rec.Doc.Nos 8, 18, 23, 24) are hereby **GRANTED** and this proceeding is **REMANDED**.

**IT IS FURTHER ORDERED** that the following cases are remanded for the reasons assigned herein: *Chicago Properties Interest, L.L.C. v. Broussard et al.*, No. 07-4126 (E.D. La. removed Aug. 15, 2007); *Manard et al. v. Bankers Ins. Co. et al*, No. 07-4127 (E.D. La. removed Aug. 15, 2007); *Cason et al. v. Broussard et al.*, No. 07-4128 (E.D. La. removed Aug. 15, 2007); *Loga et al v. Jefferson Parish et al*, No. 07-4152 (E.D. La. removed Aug. 15, 2007); *Levy v. Jefferson Parish et al*, No. 07-4153 (E.D. La. removed Aug. 15, 2007); *Kaczmarek et al v. Broussard et al.*, No. 07-4154 (E.D. La. removed Aug. 15, 2007); *Brown et al. v Broussard et al*, 07-4155 (E.D. La. removed Aug. 15, 2007); *Schmidt v. Jefferson Parish et al*, No. 07-4156 (E.D. La. removed Aug. 15, 2007).

New Orleans, Louisiana, on this __31st__ day of August, 2007.

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**

14